**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| PROGRESS PROFILES SPA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. <u>CIV-18-890-R</u> |
| v. | ) | |
| | ) | |
| M-D BUILDING PRODUCTS, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Progress Profiles SpA ("Progress Profiles") makes the following

claims for relief against Defendant M-D Building Products, Inc. ("M-D Building"):

## THE NATURE OF THE LAWSUIT

1.      This is a claim for patent infringement arising under the patent laws

of the United States, Title 35 of the United States Code § 1 *et seq*. This Court has

exclusive jurisdiction over the subject matter of the Complaint under 28 U.S.C. §§

1331 and 1338(a).

## THE PARTIES AND THE PATENTS-IN-SUIT

2.      Progress Profiles is an Italian corporation having its principal place

of business at Via Le Marze 7, 31011 Asolo (TV) Italy. Progress Profiles designs,

manufactures, markets and sells building products, including profiles and floor

underlayments, throughout the world. Progress Profiles markets and sells its

products in North America through its affiliate, Progress Profiles America Inc., which has its principal place of business at 4 Middlebury Boulevard (Unit 14), Randolph, New Jersey, 07689.

3.      One of Progress Profiles' products is Prodeso® Heat underlayment for electrically heated floors, which is shown below:



4.      The Prodeso® Heat product is a membrane that is installed above a subfloor and below the main floor, which is typically tile or ceramic. The membrane uncouples the subfloor from the main floor to prevent cracking in the main floor and, also, supports and secures a heating cable that heats the main floor. The Prodeso® Heat product eliminates the need for separate underlayments for uncoupling and supporting and securing a heating cable.

5.      Progress Profiles commercially launched the Prodeso® Heat product in March 2014.

6.      Progress Profiles has obtained patents to protect its Prodeso® Heat product.

7.      Progress Profiles is the sole owner of U.S. Patent No. 9,188,348 B2, entitled "Method and Apparatus for Positioning Heating Elements" ("the '348 patent"), which is attached as Exhibit 1. The '348 patent issued on November 17, 2015. The '348 patent issued from U.S. Patent Application No. 12/550,111 ("the '111 application").

8.      Progress Profiles has standing to sue and to seek and recover damages and other relief for infringement of the '348 patent.

9.      Progress Profiles is the sole owner of U.S. Patent No. 9,518,746 B2, entitled "Method and Apparatus for Positioning Heating Elements" ("the '746 patent"), which is attached as Exhibit 2. The '746 patent issued on December 13, 2016. The '746 patent issued from U.S. Patent Application No. 14/860,065 ("the '065 application").

10.     Progress Profiles has standing to sue and to seek and recover damages and other relief for infringement of the '746 patent.

11.     Progress Profiles is the sole owner of U.S. Patent No. 9,625,163 B2, entitled "Method and Apparatus for Positioning Heating Elements" ("the '163 patent"), which is attached as Exhibit 3. The '163 patent issued on April 18, 2017. The '163 patent issued from U.S. Patent Application No. 14/829,108 ("the '108 application").

12.     Progress Profiles has standing to sue and to seek and recover

damages and other relief for infringement of the '163 patent.

13.     M-D Building is an Oklahoma corporation having its principal place of business at 4041 North Santa Fe Ave., Oklahoma City, Oklahoma 73118.

14.     M-D Building has facilities in at least Oklahoma City, Oklahoma; Gainesville, Georgia; Brooklet, Georgia; Woodburn, Oregon; West Columbia, South Carolina; Middletown, Ohio; Hayti, Missouri; and Mississauga, Ontario Canada.

15.     M-D Building's registered agent for service of process is McAfee & Taft, a Professional Corporation, 211 North Robinson, 2 Leadership Square, Oklahoma City, OK 73102.

16.     M-D PRO, which was formerly known as the Loxcreen Flooring Group ("M-D PRO") is a business unit of M-D Building.

17.     Through its M-D PRO business unit, M-D Building markets, supplies and sells a heated floor support underlayment product called "Prova Flex-Heat," which, as of the date of this Complaint, was advertised by M-D Building at the following URL: http://provaproducts.com/products/prova-flex-heat/.

18.     M-D Building directs and controls the activities of M-D PRO.

19.     M-D Building is liable for the actions of M-D PRO.

20.     The Prova Flex-Heat product is the subject of this suit.

## JURISDICTION AND VENUE

21.     M-D Building is incorporated in Oklahoma; has conducted business in this judicial district; has purposefully availed itself of the privilege of conducting business with residents of this judicial district, including end users of the products accused of infringement; has established at least minimal contacts with Oklahoma such that it should reasonably and fairly anticipate being brought into court in Oklahoma; and has purposefully reached out to residents of Oklahoma through its marketing, distribution, and sale of products, including the products accused of infringement.

22.     M-D Building has committed acts of infringement in this judicial district.

23.     M-D Building regularly transacts business in this judicial district, including marketing, distributing, and selling the products accused of infringement.

24.     Direct infringers of the patents-in-suit also reside and practice the claimed inventions in this judicial district.

25.     This Court has personal jurisdiction over M-D Building based on M-D Building's incorporation in Oklahoma, and M-D Building's transaction of business in Oklahoma.

26.     This Court also has personal jurisdiction over M-D Building based on M-D Building's tortious acts of patent infringement, which have been committed

in Oklahoma and in this judicial district.

27.     Venue is proper in this judicial district under 28 U.S.C. § 1400(b).

## THE ACCUSED PROVA FLEX-HEAT PRODUCT

28.     The Prova Flex-Heat product is shown below:



29.     Like Progress Profiles' patented Prodeso® Heat product, Prova Flex-Heat is a membrane that is installed above a subfloor and below the main floor, which is typically tile or ceramic. The Prova Flex-Heat membrane uncouples the subfloor from the main floor to prevent cracking in the main floor and, also, secures a heating cable that heats the main floor. Like Progress Profiles' patented Prodeso Heat® product, Prova Flex-Heat eliminates the need for separate underlayments for uncoupling and supporting and securing a heating cable.

30.     Prova Flex-Heat was commercially launched in the United States in February 2016, and is marketed and sold in competition with Progress Profiles' Prodeso® Heat product.

31.     Prova Flex-Heat is designed for use in a floor assembly.

6

32.      Prova Flex-Heat is designed for use with a subfloor.

33.      Prova Flex-Heat is an underlayment for association with an in-floor heating element.

34.      Prova Flex-Heat is an underlayment layer for use in a radiant heating system.

35.      Prova Flex-Heat is an underlayment adapted to receive and secure at least one heating element of a radiant heating assembly.

36.      Prova Flex-Heat has a base material.

37.      Prova Flex-Heat has a base layer.

38.      Prova Flex-Heat's base material defines an area.

39.      Prova Flex-Heat's base material has a first side and a second side opposite each other.

40.      A pad layer is attached to the base layer of Prova Flex-Heat.

41.      A pad layer is attached to the base layer of Prova Flex-Heat by either adhesive or thermal bonding.

42.      The pad layer attached to the base layer of Prova Flex-Heat is at least one of the following: foil, cork, rubber, plastic, concrete, wood, organic materials, inorganic materials, composites, or compounds.

43.      When Prova Flex-Heat is installed with a subfloor, the bottom side of Prova Flex-Heat's pad layer is intended to be attached to the subfloor.

44.      When Prova Flex-Heat is installed with a subfloor, the bottom side of Prova Flex-Heat's pad layer is attached to the subfloor.

45.      Prova Flex-Heat has multiple protrusions on the first side of the base material.

46.      Some protrusions on the first side of Prova Flex-Heat's base material are configured as geometric shapes with a top surface, a sloping surface, and at least two sides.

47.      Prova Flex-Heat has a first protrusion disposed on the first side of the base material that is configured as a geometric shape with a top surface, a sloping surface, and at least two sides.

48.      The sloping surface of Prova Flex-Heat's first protrusion forms an obtuse angle with the first protrusion's top surface.

49.      The sloping surface of Prova Flex-Heat's first protrusion slopes downwardly from the first protrusion's top surface to the first side of Prova Flex-Heat's base material.

50.      At least one of the sides of Prova Flex-Heat's first protrusion includes an angular element receiving surface.

51.      Some protrusions on the first side of Prova Flex-Heat's base material are configured as geometric shapes that have at least two sides.

52.      Prova Flex-Heat has a second protrusion disposed on the first side of

the base material that is configured as a geometric shape with at least two sides.

53.     Prova Flex-Heat's second protrusion is adjacent to Prova Flex-Heat's first protrusion.

54.     At least one of the sides of Prova Flex-Heat's second protrusion includes an element receiving surface.

55.     At least one of the sides of Prova Flex-Heat's second protrusion includes a surface that can receive a portion of a heating element.

56.     The element receiving surface of Prova Flex-Heat's second protrusion is offset from the angular element receiving surface of Prova Flex-Heat's first protrusion.

57.     The element receiving surface of Prova Flex-Heat's second protrusion faces the angular element receiving surface of Prova Flex-Heat's first protrusion.

58.     An element receiving cavity is formed between the element receiving surface of Prova Flex-Heat's second protrusion and the angular element receiving surface of Prova Flex-Heat's first protrusion.

59.     The horizontal distance between the element receiving surface of Prova Flex-Heat's second protrusion and the angular element receiving surface of Prova Flex-Heat's first protrusion is greatest at a height closer to the first side of the base material than to the top surface of the first protrusion.

60.     The element receiving cavity formed between the element receiving surface of Prova Flex-Heat's second protrusion and the angular element receiving surface of Prova Flex-Heat's first protrusion is configured to contain at least one heating element of a radiant heating assembly.

61.     The element receiving surface of Prova Flex-Heat's second protrusion is arcuate.

62.     The first and second protrusions of Prova Flex-Heat are formed from its base material.

63.     Prova Flex-Heat's protrusions are formed from Prova Flex-Heat's base material.

64.     Prova Flex-Heat is designed for use with a heating member positioned between Prova Flex-Heat's protrusions.

65.     Prova Flex-Heat is designed for use with a heating wire positioned between Prova Flex-Heat's protrusions.

66.     Prova Flex-Heat is designed for use with a heating cable positioned between Prova Flex-Heat's protrusions.

67.     When Prova Flex-Heat is installed, a heating member is positioned between Prova Flex-Heat's protrusions.

68.     When a heating member is positioned between Prova Flex-Heat's protrusions, the protrusions secure the heating member.

69.     The heating member designed to be used with Prova Flex-Heat is a wire conduit.

70.     Prova Flex-Heat has multiple bosses.

71.     Multiple bosses extend from the base layer of Prova Flex-Heat.

72.     Prova Flex-Heat's bosses are arranged in a matrix orientation on top of a single base layer.

73.     The bosses that extend from the base layer of Prova Flex-Heat are adapted to secure an in-floor heating element, such as a heating cable.

74.     When Prova Flex-Heat is installed, a heating element is secured by Prova Flex-Heat's bosses.

75.     The bosses that extend from the base layer of Prova Flex-Heat have upper surfaces.

76.     Each of Prova Flex-Heat's bosses has an upper surface.

77.     Each of Prova Flex-Heat's bosses has a curved outer surface that forms a bowl.

78.     The curved outer surfaces of Prova Flex-Heat's bosses are faceted.

79.     The curved outer surfaces of Prova Flex-Heat's bosses are smooth.

80.     For at least one Prova Flex-Heat boss, the perimeter of the boss's curved outer surface at the point where the outer surface is adjacent to the base layer is shorter than the perimeter of the boss's curved outer surface at a height

11

approximately halfway between the base layer and the boss's upper surface.

81.     For at least one Prova Flex-Heat boss, the perimeter of the boss's curved outer surface at a height approximately halfway between the base layer and the boss's upper surface is shorter than the maximum perimeter of the boss's curved outer surface.

82.     For at least one Prova Flex-Heat boss, the maximum perimeter of the boss's curved outer surface extends above a heating element interposed between the boss and an adjacent boss.

83.     For at least one Prova Flex-Heat boss, the maximum perimeter of the boss's curved outer surface would extend above a heating element that is interposed between the boss and an adjacent boss.

84.     When a heating element is interposed between two adjacent bosses of Prova Flex-Heat, the maximum perimeter of at least one boss's curved outer surface extends above the heating element.

85.     When a heating element is interposed between two bosses of Prova Flex-Heat, the heating element is frictionally secured between the two bosses.

86.     The upper surfaces of Prova Flex-Heat's bosses are co-planar with each other.

87.     The upper surfaces of Prova Flex-Heat's bosses facilitate a direct bonding surface with an adhesive.

88.     The bosses that extend from the base layer of Prova Flex-Heat have a uniform thickness between their upper surfaces and the base layer of Prova Flex-Heat.

89.     Protrusions extend laterally from the upper surfaces of Prova Flex-Heat bosses.

90.     The bosses extending from the base layer of Prova Flex-Heat are hollow.

## INFRINGEMENT-RELATED ACTS AND KNOWLEDGE

91.     In 2016, M-D Building sold Prova Flex-Heat in the United States.

92.     In 2017, M-D Building sold Prova Flex-Heat in the United States.

93.     In 2018, M-D Building has sold Prova Flex-Heat in the United States.

94.     M-D Building sells Prova Flex-Heat in the United States.

95.     M-D Building intends to continue selling Prova Flex-Heat in the United States.

96.     M-D Building does not intend to discontinue selling Prova Flex-Heat in the United States.

97.     In 2016, M-D Building offered Prova Flex-Heat for sale in the United States.

98.     In 2017, M-D Building offered Prova Flex-Heat for sale in the United States.

99.     In 2018, M-D Building has offered Prova Flex-Heat for sale in the United States.

100.    M-D Building offers Prova Flex-Heat for sale in the United States.

101.    M-D Building intends to continue offering Prova Flex-Heat for sale in the United States.

102.    M-D Building does not intend to discontinue offering Prova Flex-Heat for sale in the United States.

103.    In 2016, M-D Building imported Prova Flex-Heat into the United States.

104.    In 2017, M-D Building imported Prova Flex-Heat into the United States.

105.    In 2018, M-D Building has imported Prova Flex-Heat into the United States.

106.    M-D Building imports Prova Flex-Heat into the United States.

107.    M-D Building intends to keep importing Prova Flex-Heat into the United States.

108.    M-D Building does not intend to discontinue importing Prova Flex-Heat into the United States.

109.    In 2016, M-D Building used Prova Flex-Heat underlayments in the United States.

110.     In 2017, M-D Building used Prova Flex-Heat underlayments in the United States.

111.     In 2018, M-D Building has used Prova Flex-Heat underlayments in the United States.

112.     M-D Building uses Prova Flex-Heat underlayments in the United States.

113.     M-D Building intends to keep using Prova Flex-Heat underlayments in the United States.

114.     Since December 13, 2016, M-D Building has inserted a heating cable into the channels of at least one Prova Flex-Heat underlayment in the United States.

115.     In 2016, M-D Building installed Prova Flex-Heat underlayments in the United States.

116.     In 2017, M-D Building installed Prova Flex-Heat underlayments in the United States.

117.     In 2018, M-D Building has installed Prova Flex-Heat underlayments in the United States.

118.     M-D Building installs Prova Flex-Heat underlayments in the United States.

119.     M-D Building intends to keep installing Prova Flex-Heat underlayments in the United States.

120.    Since April 18, 2017, M-D Building has installed at least one Prova Flex-Heat underlayment in the United States whereby the installation was in a floor assembly and M-D Building inserted a heating cable into the channels of the Prova Flex-Heat underlayment.

121.    Since April 18, 2017, M-D Building has installed at least one Prova Flex-Heat underlayment in the United States whereby the installation was in a floor assembly with a subfloor, M-D Building inserted a heating cable into the channels of the Prova Flex-Heat underlayment, and M-D Building attached the subfloor to the bottom side of the Prova Flex-Heat's pad layer.

122.    M-D Building provides instructions for the installation of Prova Flex Heat.

123.    M-D Building provides instructions for the use of a heating cable in the Prova Flex-Heat underlayment.

124.    M-D Building instructs users of Prova Flex-Heat to position a heating member between Prova Flex-Heat's protrusions so that the protrusions secure the heating member.

125.    M-D Building instructs users of Prova Flex-Heat to use Prova Flex-Heat in a flooring assembly.

126.    M-D Building instructs users of Prova Flex-Heat to use Prova Flex-Heat with a radiant-heating system.

127.     M-D Building intends for users of the Prova Flex-Heat to follow the installation instructions it provides with or for Prova Flex-Heat.

128.     On January 11, 2016, counsel for Progress Profiles sent a letter to the Loxcreen Flooring Group ("Loxcreen")[1] and M-D Building. This letter informed M-D Building and Loxcreen of the '348 patent and their potential infringement of the '348 patent through its intended exhibition of Prova Flex-Heat at an upcoming Surfaces trade show. This letter further requested that M-D Building and Loxcreen refrain from (1) exhibiting Prova Flex-Heat and displaying, distributing, and using any associated trade materials at the upcoming Surfaces trade show, and (2) making, using, marketing, offering for sale, distributing, selling, and importing Prova Flex-Heat, at least until any potential patent infringement issues could be resolved.

129.     M-D Building has been aware of the '348 patent at least since receiving Progress Profiles' January 11, 2016 letter.

130.     M-D Building has been aware of Progress Profiles' allegations of M-D Building's infringement of the '348 patent at least since receiving Progress Profiles' January 11, 2016 letter.

131.     At the Surfaces trade show, M-D Building and/or Loxcreen exhibited the Prova Flex-Heat product and distributed related trade literature.

132.     On March 22, 2016, counsel for Progress Profiles sent a letter to

---

[1] As alleged above, Loxcreen is now known as M-D PRO.

counsel for M-D Building and Loxcreen. This letter attached a claim chart demonstrating Progress Profiles' belief that Prova Flex-Heat infringed the '348 patent. This letter further requested that M-D Building and Loxcreen refrain from (1) exhibiting Prova Flex-Heat and displaying, distributing, and using any associated trade materials in the United States, and (2) making, using, marketing, offering for sale, distributing, selling, and importing Prova Flex-Heat in the United States, at least until their infringement could be resolved.

133.    After receiving the March 22, 2016 letter, M-D Building exhibited and commercialized the Prova Flex-Heat product in the United States.

134.    On March 9, 2017, counsel for Progress Profiles emailed counsel for M-D Building and Loxcreen. This email informed M-D Building and Loxcreen of the issued '746 patent and the '108 application, which had been allowed by the U.S. Patent and Trademark Office and shortly thereafter issued as the '163 patent. This email also attached claim charts demonstrating Progress Profiles' belief that Prova Flex-Heat infringed the '746 patent and the allowed claims of the '108 application.

135.    M-D Building has been aware of the '746 patent at least since receiving Progress Profiles' March 9, 2017 email.

136.    M-D Building has been aware of the allowed '108 application at least since receiving Progress Profiles' March 9, 2017 email.

137.    M-D Building was aware of the '163 patent prior to the filing of this

Complaint.

138.    M-D Building has been aware of Progress Profiles' allegations of M-D Building's infringement of the '746 patent at least since receiving Progress Profiles' March 9, 2017 email.

139.    M-D Building has been aware of Progress Profiles' allegations of M-D Building's infringement of the allowed claims of the '108 application at least since receiving Progress Profiles' March 9, 2017 email.

140.    M-D Building was aware of Progress Profiles' allegations of M-D Building's infringement of the '163 patent prior to the filing of this Complaint.

141.    In its March 9, 2017 email, counsel for Progress Profiles renewed its request that M-D Building and Loxcreen refrain from (1) exhibiting Prova Flex-Heat and displaying, distributing and using any associated trade materials in the United States, and (2) making, using, marketing, offering for sale, distributing, selling and importing Prova Flex-Heat in the United States or assisting anyone else in doing so, at least until the matter of their infringement could be resolved.

142.    After receiving the March 9, 2017 email, M-D Building continued to exhibit and commercialize the Prova Flex-Heat product in the United States.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 9,188,348 B2

143.    M-D Building has infringed at least claims 21, 22, and 25 of the '348 patent under 35 U.S.C. § 271(a) by using, offering for sale, selling, and importing the Prova Flex-Heat products in the United States.

144.    M-D Building has actively induced infringement of at least claims 21, 22, and 25 of the '348 patent under 35 U.S.C. § 271(b) by providing, and encouraging, instructing, and aiding others to use, sell, and/or otherwise provide the Prova Flex-Heat underlayment. Such others, whose actions constitute direct infringement, include product distributors, retail outlets, homeowners with the Prova Flex-Heat underlayment installed in their homes, and persons who install the Prova Flex-Heat underlayment. M-D Building has carried out these actions with actual knowledge of the '348 patent, with the specific intent to induce infringement of that patent, and with the knowledge that others' use, sale, or provision of the Prova Flex-Heat underlayment would constitute infringement of the '348 patent.

145.    M-D Building has contributed to infringement of at least claims 21, 22, and 25 of the '348 patent under 35 U.S.C. § 271(c) by selling, offering for sale, and providing the Prova Flex-Heat underlayments, with knowledge of the '348 patent, and encouraging, instructing, and aiding others to use these products in an infringing manner. Such others, whose actions constitute direct infringement, include product distributors, retail outlets, homeowners with the Prova Flex-Heat

underlayment installed in their homes, and persons who install the Prova Flex-Heat underlayment. M-D Building has carried out these actions knowing that Prova Flex-Heat is especially made and adapted for use, and is in fact used, in a manner that constitutes infringement of the '348 patent.

146.     The Prova Flex-Heat underlayment constitutes a material part of the inventions described and claimed in the '348 patent. Moreover, the Prova Flex-Heat underlayment is not a staple article or commodity of commerce suitable for substantial non-infringing uses.

147.     M-D Building's infringement of the '348 patent has injured Progress Profiles, and Progress Profiles will continue to be injured by M-D Building's infringement unless and until this Court enters an injunction prohibiting further direct and indirect infringement of the '348 patent.

148.     Progress Profiles is entitled to recover damages adequate to compensate it for M-D Building's infringement of the '348 patent in an amount no less than a reasonable royalty.

149.     M-D Building's infringement of the '348 patent has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, and flagrant. With full awareness of the '348 patent, and despite the knowledge that its actions would constitute and result in infringement of the '348 patent, M-D Building continued using, selling, offering for sale, and importing the

Prova Flex-Heat products, even after Progress Profiles requested that M-D Building refrain from these actions until the issue of infringement could be resolved.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 9,518,746 B2

150.    M-D Building has infringed at least claims 1, 9, and 10 of the '746 patent under 35 U.S.C. § 271(a) by using, offering for sale, selling, and importing the Prova Flex-Heat products in the United States.

151.    M-D Building has actively induced infringement of at least claims 1, 2, 4, 9, and 10 of the '746 patent under 35 U.S.C. § 271(b) by providing, and encouraging, instructing, and aiding others to use, sell, and/or otherwise provide the Prova Flex-Heat underlayment. Such others, whose actions constitute direct infringement, include product distributors, retail outlets, homeowners with the Prova Flex-Heat underlayment installed in their homes, and persons who install and/or use the Prova Flex-Heat underlayment, including installations and uses where a heating element, such as a heating cable, is inserted into the channels of the underlayment. M-D Building has carried out these actions with actual knowledge of the '746 patent, with the specific intent to induce infringement of that patent, and with the knowledge that others' use or sale of the Prova Flex-Heat underlayment would constitute infringement of the '746 patent.

152.    M-D Building has contributed to infringement of at least claims 1, 2, 4, 9, and 10 of the '746 patent under 35 U.S.C. § 271(c) by selling, offering for sale,

and providing the Prova Flex-Heat underlayments, with knowledge of the '746 patent, and encouraging, instructing, and aiding others to use these products in an infringing manner. Such others, whose actions constitute direct infringement, include product distributors, retail outlets, homeowners with the Prova Flex-Heat underlayment installed in their homes, and persons who install and/or use the Prova Flex-Heat underlayment, including installations and uses where a heating element, such as a heating cable, is inserted into the channels of the underlayment. M-D Building has carried out these actions knowing that Prova Flex-Heat is especially made and adapted for use, and is in fact used, in a manner that constitutes infringement of the '746 patent.

153.    The Prova Flex-Heat underlayment constitutes a material part of the inventions described and claimed in the '746 patent. Moreover, the Prova Flex-Heat underlayment is not a staple article or commodity of commerce suitable for substantial non-infringing uses.

154.    M-D Building's infringement of the '746 patent has injured Progress Profiles, and Progress Profiles will continue to be injured by M-D Building's infringement unless and until this Court enters an injunction prohibiting further direct and indirect infringement of the '746 patent.

155.    Progress Profiles is entitled to recover damages adequate to compensate it for M-D Building's infringement of the '746 patent in an amount no less than a reasonable royalty.

156.    M-D Building's infringement of the '746 patent has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, and flagrant. With full awareness of the '746 patent, and despite the knowledge that its actions would constitute and result in infringement of the '746 patent, M-D Building continued using, selling, offering for sale, and importing the Prova Flex-Heat products, even after Progress Profiles requested that M-D Building refrain from these actions until the issue of infringement could be resolved.

### COUNT III – INFRINGEMENT OF U.S. PATENT NO. 9,625,163 B2

157.    M-D Building has infringed at least claims 1, 6, and 7 of the '163 patent under 35 U.S.C. § 271(a) by using, offering for sale, selling, and importing the Prova Flex-Heat products in the United States.

158.    M-D Building has actively induced infringement of at least claims 1, 6, 7, 8, 9, 10, 11, 12, and 13 of the '163 patent under 35 U.S.C. § 271(b) by providing, and encouraging, instructing, and aiding others to use, sell, and/or otherwise provide the Prova Flex-Heat underlayment. Such others, whose actions constitute direct infringement, include product distributors, retail outlets, homeowners with the Prova Flex-Heat underlayment installed in their homes, and persons who install and/or use

the Prova Flex-Heat underlayment, including installations and uses in a flooring assembly where a heating element, such as a heating cable, is inserted into the channels of the underlayment. M-D Building has carried out these actions with actual knowledge of the '163 patent, with the specific intent to induce infringement of that patent, and with the knowledge that others' use or sale of the Prova Flex-Heat underlayment would constitute infringement of the '163 patent.

159.    M-D Building has contributed to infringement of at least claims 1, 6, 7, 8, 9, 10, 11, 12, and 13 of the '163 patent under 35 U.S.C. § 271(c) by selling, offering for sale, and providing the Prova Flex-Heat underlayments, with knowledge of the '163 patent, and encouraging, instructing and aiding others to use these products in an infringing manner. Such others, whose actions constitute direct infringement, include product distributors, retail outlets, homeowners with the Prova Flex-Heat underlayment installed in their homes, and persons who install and/or use the Prova Flex-Heat underlayment, including installations and uses in a flooring assembly where a heating element, such as a heating cable, is inserted into the channels of the underlayment. M-D Building has carried out these actions knowing that Prova Flex-Heat is especially made and adapted for use, and is in fact used, in a manner that constitutes infringement of the '163 patent.

160.    The Prova Flex-Heat underlayment constitutes a material part of the inventions described and claimed in the '163 patent. Moreover, the Prova Flex-Heat

underlayment is not a staple article or commodity of commerce suitable for substantial non-infringing uses.

161.     M-D Building's infringement of the '163 patent has injured Progress Profiles, and Progress Profiles will continue to be injured by M-D Building's infringement unless and until this Court enters an injunction prohibiting further direct and indirect infringement of the '163 patent.

162.     Progress Profiles is entitled to recover damages adequate to compensate it for M-D Building's infringement of the '163 patent in an amount no less than a reasonable royalty.

163.     M-D Building's infringement of the '163 patent has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, and flagrant. With full awareness of the allowed claims of the '108 application and, later, the issued '163 patent, and despite the knowledge that its actions would constitute and result in infringement of the '163 patent, M-D Building continued using, selling, offering for sale, and importing the Prova Flex-Heat products, even after Progress Profiles requested that M-D Building refrain from these actions until the issue of infringement could be resolved.

## NOTICE OF INFRINGEMENT AND "EXCEPTIONAL CASE"

164.    Progress Profiles has complied with the notice requirements of 35 U.S.C. § 287.

165.    This is an "exceptional case" under 35 U.S.C. § 285 because it stands out from others with respect to the lack of substantive strength underlying M-D Building's positions. Accordingly, Progress Profiles is entitled to an award of its attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Progress Profiles asks this Court to enter judgment against M-D Building and its subsidiaries, business units and divisions (including M-D PRO), affiliates, agents, servants, employees and all persons in active concert or participation with them, granting the following relief:

A.    A finding that M-D Building has directly infringed, and/or indirectly infringed (by way of inducement and/or contributory infringement) one or more claims of the '348 patent, the '746 patent, and the '163 patent, either literally and/or under the doctrine of equivalents.

B.    An award of damages adequate to compensate Progress Profiles for the infringement that has occurred, together with prejudgment interest from the date infringement of each of the patents-in-suit began, along with post-judgment interest, at the maximum rate allowed by law;

C.    An award to Progress Profiles of all remedies available under 35 U.S.C. § 284;

D.    A finding that this is an exceptional case and an award to Progress Profiles of all remedies available under 35 U.S.C. § 285;

E.    A preliminary and permanent injunction under 35 U.S.C. § 283 prohibiting further direct and indirect infringement of each of the patents-in-suit;

F.    Alternatively, that the Court award a compulsory future royalty, in the event that an injunction does not issue;

G.    That the Court order an accounting for damages;

H.    That Progress Profiles be awarded its costs of court; and

I.    Such other and further relief as this Court or a jury may deem proper and just.

## **JURY DEMAND**

Progress Profiles demands a trial by jury on all issues so triable.


Dated: September 11, 2018          Respectfully submitted,

<div style="margin-left:2em">

*s/ William B. Federman*
William B. Federman wbf@federmanlaw.com
Carin Marcussen clm@federmanlaw.com
Federman & Sherwood
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Phone: (405) 235-1560
Fax: (405) 239-2112

</div>

David J. Sheikh dsheikh@leesheikh.com
Christopher J. Lee clee@leesheikh.com
Richard B. Megley, Jr.
rmegley@leesheikh.com
Brian E. Haan bhaan@leesheikh.com
Ashley E. LaValley  alavalley@leesheikh.com
Dragan Gjorgiev dgjorgiev@leesheikh.com
*Pro Hac Vice pending*
LEE SHEIKH MEGLEY & HAAN
111 West Jackson Boulevard, Suite 2230
Chicago, Illinois 60604
Phone: (312) 982-0070
Fax: (312) 982-0071
***Attorneys for Progress Profiles SpA***